

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| CLARENCE A. OWENS, JR., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:05-CV-0095 |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant.[1] | § | |

**REPORT AND RECOMMENDATION
TO AFFIRM THE DECISION OF THE COMMISSIONER**

Plaintiff CLARENCE A. OWENS, JR. brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant MICHAEL J. ASTRUE, Commissioner of Social Security (Commissioner), denying plaintiff's application for a term of disability and disability benefits. Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

I.
THE RECORD

Plaintiff protectively filed for supplemental security income benefits under Title XVI of the Social Security Act on March 13, 2002. (Transcript [hereinafter Tr.] 49, 63). Plaintiff alleges an onset date of December 1, 2001. (Tr. 49). Plaintiff's impairments include peroneal spastic flat foot with chronic foot and ankle pain and obesity. (Tr. 16). It was determined at the

---

[1]On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted as the defendant in this suit.

administrative level that plaintiff had not engaged in substantial gainful activity since his alleged onset date. (*Id.*). Plaintiff was born December 28, 1981, (Tr. 49), and obtained his General Education Degree (GED). (Tr. 15, 60). According to plaintiff's Adult Disability Report, and as found by the Administrative Law Judge (ALJ), plaintiff has no past relevant work. (Tr. 20, 55).[2]

The Social Security Administration denied benefits initially and upon reconsideration. An administrative hearing was held before ALJ Gerald R. Cole on April 22, 2003. (Tr. 215-232). On October 1, 2003, the ALJ rendered an unfavorable decision, finding plaintiff not disabled and not entitled to benefits at any time relevant to the decision. (Tr. 21-22). The ALJ concluded plaintiff retained the residual functional capacity (RFC) to lift and carry up to 20 pounds occasionally and 10 pounds frequently, and to stand no more than 2 hours in an 8 hour day with no prolonged walking or standing. (Tr. 21, Finding No. 6). The ALJ determined plaintiff could perform a significant range of sedentary work with this RFC. With vocational expert testimony, the ALJ found plaintiff could perform work existing in significant numbers in the regional and national economies, (Tr. 22, Findings No. 10 and 11), and concluded plaintiff was not under a disability at any time through the date of his decision.

The Appeals Council denied plaintiff's request for review on January 20, 2005, and the ALJ's determination of not disabled became the final decision of the Commissioner. (Tr. 5-8). Plaintiff now seeks judicial review of the denial of benefits pursuant to 42 U.S.C. § 405(g).

II.
STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to

---

[2] Apparently plaintiff attempted to build fences for a relative on a farm but said he was unable to work more than a few days due to swollen ankles. (Tr. 55).

determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. The fact that the ALJ could have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ decision.

## III.
## ISSUES

The ALJ found plaintiff not disabled at Step Five of the five-step sequential analysis. Therefore, this Court is limited to reviewing only whether there was substantial evidence in the record as a whole supporting a finding that plaintiff retained the ability to perform other work that exists in significant numbers in the regional and national economies, and whether proper legal

standards were applied in making this determination. Plaintiff presents the following issues:

1. The ALJ failed to develop the record;

2. The ALJ erred at Step 5 when he concluded that plaintiff could perform sedentary work. The ALJ erred in assessing the weight to be accorded the medical evidence and erred in adopting vocational expert testimony that was inconsistent with plaintiff's skill level and the Dictionary of Occupational Titles (DOT);

3. The ALJ's credibility analysis is contrary to the evidence and the law; and

4. The transcript is inaudible, preventing adequate judicial review.

## IV.
## MERITS

### A.
### Failure to Develop the Record

Plaintiff contends the ALJ failed to develop the record in two ways. Plaintiff alleges the ALJ was obligated to obtain an RFC assessment from the consultive physician who examined plaintiff at the request of the Texas Rehabilitation Commission, Dr. Raj Saralaya. Plaintiff also alleges the ALJ failed to order a foot evaluation by a podiatrist.

Plaintiff cites 20 C.F.R. § 416.919p, which states, "If the report is inadequate or incomplete, we will contact the medical source who performed the consultive examination, give an explanation of our evidentiary needs, and ask that the medical source furnish the missing information or prepare a revised report." (Plaintiff's Brief at 7).

The medical evidence reflects plaintiff was seen by a consultive physician, Dr. Saralaya, on July 22, 2002. In his report Dr. Saralaya stated, "The patient definitely needs a workup by a podiatrist and old records from the Scottish Rite Hospital in Dallas should be obtained for further evaluation to see whether a treatable cause has been missed." (Tr. 101). Plaintiff claims the ALJ's failure to order an exam by a podiatrist or other specialist constituted a failure to fully

develop the record and was error. Plaintiff argues he was prejudiced by this error because a specialist could have shed light on "the causes of, and restrictions resulting from, his foot and ankle problems." (Plaintiff's Brief at 8).

Plaintiff does not raise this claim for the first time on appeal. Plaintiff advanced these same objections to the ALJ, and consequently, he advances the claims here only after full development at the agency administrative level. The ALJ, however, adjudicated plaintiff's objections and addressed themin his opinion as follows:

> More importantly, the Administrative Law Judge finds that the report of the [sic] Dr. Saralaya is adequate and sufficient within the criteria enumerated under 20 CFR 416.919p; that obtaining an RFCA report from Dr. Saralaya is not necessary to make his report adequate or the record complete; that a CE performed by a foot specialist is not necessary to make the record complete; and, that the RFCA assessment made by the State agency physician has appropriately been made part of the record.
> . . . .
>
> Thus, Dr. Saralaya's basis for obtaining these records [exam by podiatrist and Scottish Rite Hospital records] was for treatment rather than evaluation purposes. He provided a finding that he believed the claimant did have chronic foot and ankle pain and a medical basis for such pain. Interestingly, his assessment is similar to that of Dr. Templar who saw the claimant at the Childress Clinic in November 1996 (Exhibit 6F, p. 8).

(Tr. 15). Defendant responds to plaintiff's claim arguing the decision to order further tests is discretionary to the ALJ as evidenced by the language of 20 C.F.R. § 416.919a(b),which states further tests "*may* be ordered when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [a] claim." (Defendant's Brief at 3, emphasis added). In this case, Dr. Saralaya assessed plaintiff's functional abilities as follows:

> Higher functions were normal. Speech and hearing was normal. Cranial nerves were normal. Motor system examination revealed the patient's power was 4+/5 grossly in all four extremities with no focal weakness. The muscle tone was normal and there was no wasting of any muscle groups. The patient had power in his ankles a shade weaker than the rest of the body but it was still 4+/5. Coordination was normal. Patient had a good hand grip. Sensations were normal

> to soft touch and pinprick. Proprioception was normal. DTR were 2+. Plantars were downgoing. Gait was examined and was slow. It was wide based but there was no overt limp or circumduction. Very little ankle movement was observed on ambulation. The patient was keeping his ankles stiff. The arches of his feet became diminished further when he was standing. Romberg's was negative. Tandem walking was normal. Patient was not able to stand on his heels. He was able to stand on his toes with effort. He was not able to lift his ankles up all of the way as normally can be done. He was able to lift his ankles approximately 1 centimeter above the ground. Squatting was normal.
>
> . . . .
>
> Range of motion was tested and was normal in the cervical spine and upper extremities. ROM in the hips and knees was normal. In the ankles, dorsiflexion was 30 degrees and plantarflexion was 30 degrees. Inversion and eversion was not possible. Passive ROM was within normal in the ankle area. ROM in the toes was within normal. Examination of the thoracolumbar spine revealed that from the waist up, patient was able to bend down to an angle of 90 degrees. Extension was 20 degrees, lateral bending was 40 degrees, and lateral rotation was 90 degrees.
>
> Impression - 1. Chronic foot and ankle pain possibly related to muscle spasm and loss of arch of his feet with obesity compounding his other problems. The patient definitely needs a workup by a podiatrist and old records from the Scottish Rite Hospital in Dallas should be obtained for further evaluation to see whether a treatable cause has been missed. 2. Obesity, for which patient should be on a weight reducing diet with more exercise.

(Tr. 101). Dr. Saralaya's report fully assesses plaintiff's limitations and the fact that Dr. Saralaya did not make an RFC determination is not reversible. As argued by defendant, a state agency medical consultant did complete an RFC assessment on August 19, 2002, not quite a month after Dr. Saralaya's report. In this RFC, the medical consultant concluded plaintiff could occasionally lift and/or carry 50 pounds, could frequently lift and/or carry 25 pounds, could stand and/or walk (with normal breaks) a total of at least 2 hours in an 8-hour workday, could sit (with normal breaks) a total of about 6 hours in an 8-hour workday, and found plaintiff's ability to push and/or pull (hand and/or foot controls) was unlimited, other than as shown for lift and/or carry. (Tr. 107). The medical consultant determined plaintiff had no postural limitations, (Tr. 108), had no

manipulative or visual limitations, (Tr. 109), and had no communicative or environmental limitations, (Tr. 110). In this RFC assessment the medical consultant stated,

> 20 year old male with history of foot and ankle pain. Apparently claimant has had problem with his foot and ankle since the age [of] 13. He is unable to walk long distance. He has some stiffness and swelling of the ankles. *Physical exam was obtained by CE* (emphasis added). Claimant has a wide-based gait and slow but no limping or circumduction. Negative Romberg's. Normal tandem gait. Some reduction of ROM [range of motion] of ankles. X-ray of ankles are negative. Limitations not wholly supported by MER [medical evidence of record] and other evidence.

(Tr. 111).[3] This RFC cited and considered Dr. Saralaya's report and findings. While it may have been desirable to have also had an RFC from Dr. Saralaya, it was not imperative, and the ALJ did not commit reversible error by failing to request such. Consequently, the ALJ did not err in failing to fully develop the record. He considered the medical evidence before him. He considered plaintiff's objections and explained his determination that the record was complete. (Tr. 15).

Plaintiff also contends the ALJ erred and failed to fully develop the record because he did not order an exam by a podiatrist or other specialist. Plaintiff cites Dr. Saralaya's statement that "[t]he patient definitely needs a workup by a podiatrist and old records from the Scottish Rite Hospital in Dallas should be obtained for further evaluation to see whether a treatable cause has been missed." (Tr. 101). The ALJ addressed this issue, holding that an examination by a foot specialist was not necessary because Dr. Saralaya's basis for such was for treatment purposes rather than for evaluation purposes. If the ALJ was correct and Dr. Saralaya's recommendation was merely for the purposes of treatment with a view towards improving plaintiff's condition, *i.e.*,

---

[3] The undersigned notes he has used words instead of the abbreviations used in the RFC summation paragraph for example, a circle with a line in it is "negative" and hx is "history."

to see whether a treatable cause had been missed, then plaintiff cannot show harm. If, on the other hand, Dr. Saralaya's statement was that an examination by a specialist was necessary because Dr. Saralaya was not able to fully evaluate plaintiff's condition, then plaintiff's point is valid. Upon review of Dr. Saralaya's report, it is the opinion of the undersigned that the ALJ's evaluation of that report was correct. Dr. Saralaya' recommendation for a specialist and to obtain old medical records was for the purpose of treatment in trying to determine whether some treatable cause might be present rather than for purposes of supplementing Dr. Saralaya's functional examination.

For the reasons set forth above, plaintiff's first claim does not present a basis upon which this Court can find reversible error and plaintiff is not entitled to relief.

## B.
## Error at Step 5

Plaintiff next argues the ALJ committed an error of law at Step 5 in assessing the weight to be accorded the medical evidence of plaintiff's treating physicians and in adopting vocational expert (VE) testimony which plaintiff alleges was inconsistent with plaintiff's skill level and the Dictionary of Occupational Titles (DOT). Plaintiff alleges the medical record contains uncontradicted opinions by doctors that plaintiff's foot and ankle problems affect his ability to walk and stand. (Plaintiff's Brief at 13). He further argues the ALJ failed to ascertain whether Dr. Kaleem Ahmad was a treating physician, and he failed to properly consider his opinion pursuant to *Newton v. Apfel*, 209 F.3d 448, 455-56 (5th Cir. 2000), even though his opinion was conclusory. (Plaintiff's Brief at 13). *Newton* clarified Social Security Regulations by requiring an ALJ to consider a list of factors when determining that a treating physician's opinion is not entitled to controlling weight. *Newton*, 209 F.3d at 456. The factors to be considered are:

1) the length of treatment;
2) the frequency of examinations;
3) the nature and extent of the relationship;
4) the support provided by other evidence;
5) the consistency of the opinion with the record; and
6) the doctor's specialization.

*Id*.

Dr. Ahmad's evaluation is found on a prescription pad note, dated November 12, 2001, and stating, "To Whom It May Concern, This is to state that Antonio Owens was evaluated by me for obesity & arthritis is unable to work, even part time [because] of above noticed problems." (Tr. 99). Addressing this note the ALJ stated, "In assessing the claimant's residual functional capacity, consideration has been given to the opinion of Dr. Ahmad that due to obesity and arthritis the claimant is unable to walk or perform even part-time work activity. It is difficult to determine whether Dr. Ahmad is a treating physician. Further, his report is not supported by treating notations and is brief and conclusory." (Tr. 19).[4] Dr. Ahmad is affiliated with the Collingsworth Family Clinic, as noted on his prescription pad, (Tr. 99), and while there was an attempt on June 3, 2002, to obtain records from this clinic for the dates January 1, 2001, to present, such request was returned with a notation, "There are not any records for the dates requested." (Tr. 105). Consequently, no records from Collingsworth Family Clinic were received nor were they reviewed by the ALJ. Records were, however, received by the Appeals Council. (Tr. 4, records labeled as AC-2, Tr.130-166). Review of these records, which date from August 22, 1992, through August 8, 2000, reflect diagnoses of morbid obesity, lower extremity

---

[4]The ALJ opinion cites Dr. Ahmad's note as saying "unable to walk," but the note actually looks like "unable to work," especially in light of the following phrase "even part-time." (Tr. 19). This distinction does not change the Court's analysis however, because later in the same paragraph the ALJ stated, "While [Dr. Ahmad] indicated that the claimant was unable to work due to obesity and arthritis. . . ," thus, the prior use of the word "walk" could have been a typographical error. In any event, the ALJ treated the opinion of the physician as concluding plaintiff could not work.

pain and/or flat feet.  (Tr. 132, 133, 134, 135, 141, 144, 145, 147).  Plaintiff identifies pages 132, 133, and 134 as supporting Dr. Ahmad's conclusions.  On page 133, dated August 27, 1999, Dr. Ahmad noted, "I explained to mom there is no reason he couldn't be going to school.  He need[s] to have more adequate pain control.  If I need to put him on diet pills to reduce his weight, it would be appropriate." (Tr. 133).  At page 134, Dr. Ahmad further reported, in a January 22, 1999 record, that in his examination of plaintiff, except for morbid obesity, he was found to be within normal limits.  (Tr. 134).  Notes from this clinic also show that at some date in 1998 (the month failed to copy), the clinic was attempting to treat plaintiff's obesity by recommending a reduced calorie diet with regular daily exercise, and it was recommended plaintiff could use a stationary bicycle due to foot problems.  (Tr. 161).  In the same report it, was noted, " very little walking due to problems with his feet, but does play basketball." (*Id.*).  These are the only records from Collingsworth Family Clinic and/or Dr. Ahmad.  These records, which date up to August 8, 2000, do not appear consistent with Dr. Ahmad's note written on November 12, 2001, of a total inability to work, even part-time.  (Tr. 99).  The ALJ determined Dr. Ahmad's November 12, 2001 note was conclusory, and if the ALJ had received Dr. Ahmad's records, it does not appear the ALJ would have reached a different conclusion regarding the note because the clinic treatment notes do not support the November 12, 2001 determination.  Therefore, even if Dr. Ahmad is classified as a treating physician, and even if, arguendo, it was error to fail to obtain plaintiff's records, such error was corrected by the Appeals Council, who received and considered the Collingsworth Clinic records and declined to remand the case.  These additional records do not support a finding of disabled.

     Plaintiff next argues the ALJ failed to accord considerable weight to the opinions, diagnoses and medical evidence of treating physicians.  Records from the Scottish Rite Hospital

in Dallas show plaintiff was treated there on July 16, 1998, (Tr. 174, 183-184, 191), and September 24, 1998, (Tr. 185). Those records also indicate plaintiff was seen on September 24, 1998, for the initiation of orthotic treatment (shoe inserts), (Tr. 202), and on November 5, 1998, for the fitting of the orthoses. (Tr. 200). The remainder of the records are labeled "Outpatient Message Report," and appear to be records of phone conversations primarily with plaintiff's mother about his condition. (Tr. 186-190). On March 5, 1999, there is a "Social Work Progress Note," indicating plaintiff's feet hurt too much to travel to Dallas and requesting referral to a physician in Childress, Texas. (Tr. 196). Plaintiff was advised to contact a Dr. Moore of St. Anthony's Hospital in Amarillo, Texas to schedule an appointment. (*Id*.). It is not clear whether plaintiff or his mother followed this advice. There are no records from that hospital.

Finally, the records reflect plaintiff was treated by the Family Clinic in Childress, Texas. These records consist primarily of phone messages complaining of pain and/or requesting refills for naproxin or ibuprophen. (Tr. 119-124). On November 14, 1996 there is a notation in the record documenting plaintiff's complaints of continued ankle pain. The notation also states, "He is quite heavy, states it is worse if he is up on his feet, doesn't bother him if he is not on them." (Tr. 125). On November 26, 1996, plaintiff was examined by Dr. Lowell Templar at the Childress Clinic who noted the following,

> He has in his left foot on clinical examination, almost complete rigidity of his hind foot. He has no pliability whatsoever and clinically would appear like he has a vertical talus. Neurovascular functions are intact. His x-rays do not show any arthritic involvement, they do not show a vertical talus, they do show overall appropriate alignment of his foot. So, it is my impression, that he has what we call a peroneal spastic flat foot, that is where the perineum muscle stay in constant spasm and keep the foot everted even in a walking position. However, in observing this young man walking, he actually walks with his feet fairly straight.

(Tr. 125). The doctor suggests weight loss as the number one goal for plaintiff and discusses the

possibility of obtaining shoe inlays or orthopedic shoes, although he expressed skepticism that plaintiff will wear the latter due to appearance. (*Id*.). The doctor also stated,

> they have been sending him home because he complains with his feet and I sent a note along with him he is not to miss school with complaints with his feet, he can stay in school. He will have to get himself educated in some form or fashion to either vocationally or scholastically earn a living. It is a relatively sessile situation, he will never be able to walk or stand for long distances or stand for a long periods of time on his feet, they will never be that good.

(*Id*.). It was this report the ALJ compared to that of Dr. Saralaya's July 22, 2002 examination (Tr. 100-101) stating, "Interestingly, his assessment is similar to that of Dr. Templar who saw the claimant at the Childress Clinic in November of 1996." (Tr. 15). Taking all the medical evidence into consideration as discussed above, the Court is of the opinion the ALJ fulfilled his duty to consider and weigh all the medical evidence of plaintiff's treating physicians. Except for the note from Dr. Ahmad in November 2001, which the ALJ found to be conclusory, the medical records appear to be consistent.

To the extent plaintiff argues the medical evidence does not support the ALJ's RFC finding, such claim does not entitle plaintiff to relief. The ALJ determined plaintiff had the ability to "lift and carry up to 20 pounds occasionally and 10 pounds frequently; and, stand no more than 2 hours in an 8 hour work day with no prolonged walking or standing." (Tr. 19). The ALJ then determined plaintiff was capable of performing a significant range of sedentary work as defined in 20 C.F.R. § 416.967(a) which states,

> *Sedentary work.* Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

(Tr. 20). Plaintiff argues this was error because no evidence in the record positively stated

plaintiff had such abilities. (Plaintiff's Brief at 14). Plaintiff further argues the ALJ should have adopted the RFC hypothetical with only one hour of standing with no prolonged walking versus the two hour capability he adopted. Response by the VE to the one-hour standing hypothetical resulted in a significant erosion of jobs and, in fact, the VE stated he felt no work would be available. (Tr. 229). Whether plaintiff is capable of standing one hour a day versus two hours a day is a finding that is not subject to exact determination; the determination is for the ALJ to make, and it will stand so long as it is supported by substantial evidence. In this case, not only did a state agency medical consultant conclude plaintiff was capable of this RFC level, (Tr. 107), the medical consultant also determined plaintiff had no postural limitations, (Tr. 108), had no manipulative or visual limitations, (Tr. 109), and had no communicative or environmental limitations, (Tr. 110). This RFC was based, in part, on the 2002 examination of Dr. Saralaya, which the ALJ found to be consistent with the 1996 records from plaintiff's treating physician, Dr. Templar. (Tr. 15). While the medical evidence might haven been construed by the ALJ as warranting a finding of disabled, the fact that the ALJ might have decided the case either way does not mean the ALJ committed reversible error in finding plaintiff not disabled. Substantial evidence exists to support the ALJ's RFC determination.

Finally, under this second point of error plaintiff argues the ALJ erred in adopting VE testimony that was inconsistent with plaintiff's skill level and the DOT. To the extent plaintiff argues the VE's testimony was in response to a defective hypothetical, such claim is without merit for the reasons set forth above. Plaintiff then argues the VE's testimony conflicted with the DOT, and the ALJ erred in failing to address these inconsistencies. (Plaintiff's Brief at 9). The VE testified plaintiff could perform three jobs: surveillance systems monitor, which he classified as sedentary/unskilled; taxi cab starter, which he classified as sedentary/unskilled; and

companion, which he classified as sedentary/semi-skilled. (Tr. 229). The ALJ adopted these findings. (Tr. 21). Plaintiff submits the DOT classifies the job of companion as light/semi-skilled, and the job of taxi cab starter as sedentary but semi-skilled. (Plaintiff's Brief at 11, Exhibits A - C). Plaintiff argues because he has no past relevant work, he has no transferable skills and it was error to find he could perform the jobs of companion or taxi cab starter. Defendant counters, stating the DOT "lists maximum requirements of occupations as generally performed, not the range of requirements of a particular job as it is performed in specific settings." (Defendant's Brief at 6) (citing SSR 00-4p at *3). A VE "may be able to provide more specific information about jobs or occupations than the DOT." *Id.* The DOT itself cautions that its descriptions may not coincide in every respect with the content of jobs as performed in particular establishments or at certain localities, *DOT*, Vol. 1, p. xiii, and states that not all of the jobs in every category have requirements identical to or as rigorous as those listed in the DOT. (*Id.*) (citing *Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1996)). The Fifth Circuit has clarified that while the DOT "simply gives a *general description* of the [job] duties involved," a VE "is familiar with the specific requirements of a particular occupation, including working conditions and the *attributes and skills* needed," and is "able to compare all the unique requirements of a specified job with the particular ailments a [plaintiff] suffers in order to reach a reasoned conclusion whether the [plaintiff] can perform the specific job." (*Id.*) (*quoting Fields v. Bowen*, 805 F.2d 1168, 1170-71 (5th Cir. 1986). In *Carey v. Apfel*, 230 F.3d 131 (5th Cir. 2000), the Fifth Circuit addressed the issue of conflicts between VE testimony and the DOT and held,

> [A]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation. Moreover, claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the DOT, and then present that conflict as reversible

error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing. Adopting a middle ground approach, in which neither the DOT nor the vocational expert testimony is per se controlling, permits a more straightforward approach to the pertinent issue, which is whether there is substantial evidence supporting the Commissioner's determination that this particular person can do this particular job or group of jobs.

*Carey*, 230 F.3d at 146-47. In the instant case, the VE testified the jobs of surveillance systems monitor and taxi cab starter were sedentary and unskilled and the job of companion was sedentary and semi-skilled. While plaintiff contends the DOT categorizes the taxi cab starter job as semi-skilled and the job companion as light and semi-skilled, such DOT job descriptions contain maximum qualifications. Further, even if the jobs of companion and taxi cab starter <u>might</u> be eroded to some degree, the sedentary/unskilled job of surveillance system monitor remains unaffected.

Plaintiff challenges the VE's testimony about the job of surveillance system monitor, citing *Stevenson v. Apfel*, 170 F.Supp.2d 713, 717 (W.D. Tex. 2000), for the proposition that such job is limited to transportation terminals, and the VE erred in failing to identify the number of jobs in transportation terminals. Defendant responds that the VE testimony regarding police impound facilities is consistent with the DOT. (Defendant's Brief at 8) (citing (Tr. 230)). Plaintiff also categorizes the VE testimony regarding the number of surveillance system jobs as inherently unreliable because the number presented was four times higher than a figure cited in 1995 caselaw. The Fifth Circuit, however, has stressed the value of VE testimony and has held, "[t]he value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed." (Defendant's Brief at 6) (citing *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986)). Plaintiff challenges the VE's veracity based upon the VE's alleged inability to articulate for the ALJ the proper description and/or duties of a surveillance systems monitor and his calculation of the

number of such jobs in Texas. These allegations do not rise to the level necessary to undermine the VE opinion. Lastly, plaintiff argues the ALJ erred because he failed to consider the distance plaintiff is capable of traveling to jobs, pursuant to *Mericle v. Secretary of Health & Human Services*, 892 F.Supp. 843, 847 (E.D. Tex. 1995). Defendant responds that this argument does not have merit because plaintiff's treating physician, Dr. Ahmad, told plaintiff there was no reason he could not attend school. (Defendant's Brief at 8). There is nothing in the record, however, to indicate the distance to plaintiff's school. Further, plaintiff has put forth nothing to show the ALJ failed to consider the distance plaintiff was capable of traveling. While the ALJ did not make a specific finding regarding distance, it cannot be said he failed to consider it. He heard testimony from a VE who heard and read the evidence of record as well as considering a hypothetical. This VE ultimately gave an opinion of jobs based upon all this evidence, including plaintiff's testimony regarding school attendance and travel. Such evidence was adequately considered by the ALJ.

C.
The ALJ's Credibility Analysis

In his third point of error plaintiff complains the ALJ's credibility analysis was contrary to the evidence and the law. Specifically, plaintiff argues the ALJ failed to articulate specific, plausible reasons for rejecting plaintiff's complaints of pain. Plaintiff notes the ALJ did, however, recite medical evidence in the record he considered contradictory to plaintiff's complaints. (Tr. 17-19, 21). While it is true the ALJ noted plaintiff had limitations in his ability to seek medical care, it does not appear the ALJ considered this fact determinative in assessing credibility.[5] In fact, the ALJ stated,

---

[5] If in fact the adverse credibility finding rested only on plaintiff's failure to seek medical care after turning 18, and if in fact plaintiff's failure was due to lack of financial resources, then the credibility finding would be highly suspect. As set forth above, however, that was not the sole basis of the ALJ's credibility finding.

> While the claimant does have limitations on his ability to seek medical care, the
> total absence of any medical records concerning the claimant's condition during
> the last three or four years and the benign nature of previous medical reports fail to
> document that his overall condition prevents him from performing total walking
> and standing of up to two hours during an eight hour day.

(Tr. 19). The ALJ is correct in holding that the medical records over the five year period until plaintiff turned 18 do not support limitations to the degree claimed by plaintiff. While these records include a history of complaints of pain, the ALJ was entitled to discount such complaints as inconsistent with the objective medical findings. This claim does not entitle plaintiff to relief.

### D.
### The Hearing Record

Lastly, plaintiff argues the case should be remanded due to the poor quality of the transcription of the administrative hearing, submitting it prevents judicial review. While the transcription is far from ideal, it is not so inadequate as to prevent judicial review. It is clear plaintiff socializes with his family and lifts weights. (Tr. 220). He testified that both his ankles are bad and that doctors have told him to lose weight. (Tr. 222-23). It was established that up until he was 18, plaintiff was on Medicaid, but once he turned 18, plaintiff was dropped from Medicaid and could not afford to pay for healthcare. (Tr. 224). He testified he had been given some pads (inserts) for his feet, but they weren't sturdy enough, (Tr. 224) and that one doctor in Dallas suggested a shoe and a brace. (Tr. 224-25). He testified his feet get stiff, that his Mother has to massage him four nights a week, that he has swelling and pain in these areas, and that while it always hurts, he has good days and bad days. (Tr. 225). The bad days he says occur about four days a week and when they do, he just props his feet up on pillows. (Tr. 225-26). Plaintiff testified that while he does not have a driver's license, he does some driving. (Tr. 227). Further, he said he has problems operating the pedals due to pain, but when asked if it ever goes

away, plaintiff said yes. (Tr. 227). Plaintiff also testified there are times when he can walk two blocks to the doctor and then walk straight back home. (*Id.*). It is undisputed that the hearing record contains gaps in plaintiff's testimony. Those gaps, however, are not so severe that remand is required. From the testimony available, plaintiff's position, in his application papers and correspondence is consistent with his testimony at the hearing. Plaintiff has not directed the Court to any critical portion of his testimony which was omitted from the hearing record.

Inaudible portions of the hearing record, with respect to the VE testimony, are more troublesome. However, the record is clear that the hypothetical posed by the ALJ was responded to by the VE, who determined that an individual with restrictions outlined in the hypothetical would be capable of performing the jobs identified. In addition to the VE and the ALJ being present, both plaintiff and his counsel attended the hearing, and nothing has been presented in this appeal as to any areas of the VE testimony and/or cross-examination that were not transcribed or that were inaccurate, so as to require reversal and/or remand.

This is an unfortunate case. Clearly, plaintiff suffers from impairments which significantly affect his ability to ambulate, to stand for prolonged periods, and to walk. These impairments, however, do not render him totally disabled. Were this issue being presented anew, this Court might very well decide otherwise.[6] In the context of a disability appeal, however, the issue is not as close. There is substantial evidence to support the ALJ's RFC finding. This finding, coupled with vocational expert testimony, provides a sufficient basis to affirm the finding of not disabled.

---

[6]The crux of the case appears to rest primarily on whether plaintiff can walk and/or stand one versus two hours out of an eight hour day.

# V.
# RECOMMENDATION

THEREFORE, for all of the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the defendant Commissioner finding plaintiff not disabled and not entitled to a period of disability benefits be AFFIRMED.

# VI.
# INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 11th day of March 2008.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be filed **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).